(8 App. Div. 529)

MUMFORD v. CROUCH et al.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

ESTOPPEL—TO DENY VALIDITY OF MORTGAGE.

A debtor gave his creditor a chattel mortgage, and assigned to him the amount to be recovered in a pending action by the debtor against a third person. It was agreed that the mortgagor should continue in possession of the property, and use the same, or its proceeds if sold. Afterwards other creditors recovered judgments against the debtor, and plaintiff was appointed receiver of the debtor's property. The mortgagee foreclosed the mortgage, and bought the property at the foreclosure sale. An action was brought by the mortgagor against the mortgagee for an accounting, and the receiver was substituted as plaintiff therein. On the accounting the mortgagor was credited with the amount for which the mortgagee bought the property on foreclosure. *Held*, that crediting the mortgagor with the amount of such foreclosure sale was not a ratification of the sale, or an affirmation of the validity of the mortgage, so as to preclude the receiver from suing to set the mortgage aside.

Appeal from special term, Monroe county.

Action by William W. Mumford, as receiver of the property of George N. Powell and William J. Powell, against George W. Crouch and others. There was a judgment in favor of defendants George H. Powell and William J. Powell, and plaintiff appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Elbridge L. Adams, for appellant.
Horace G. Pierce, for respondents.

GREEN, J. This action was brought to set aside as fraudulent and void as against the plaintiff and the creditors whom he repre-sents a chattel mortgage made by the defendants Powell to the de-fendants Crouch. The mortgage is challenged on the ground that the mortgagors were allowed to remain in possession and to sell a

portion of the goods and use the avails thereof, and also because of the nonfiling of the mortgage. The plaintiff also charges that the mortgage was delivered conditionally, and was not to be used by the mortgagees in the event that the proceeds of a certain suit, brought by the Powells against one Cunningham, should be sufficient to pay a debt owing by the Powells to the mortgagees. Judgment is demanded declaring the mortgage fraudulent and void, and directing the defendants Crouch to deliver the property to plaintiff, or else pay him the value thereof, or for such other or further or different relief as plaintiff may be entitled to. There is set forth in the answer, among other things, a former judgment in bar and as an estoppel, and other acts are also alleged therein as constituting an estoppel.

The material facts are these: The defendants Powell were, for some time previous to 1891, builders and contractors in the city of Rochester. On or about the 7th day of July, 1890, they made a chattel mortgage to the defendants Crouch, in and by which they transferred to the latter, as and for a continuing security to the amount of $10,000, their tools, machinery, moldings, lumber, horses, and wagons. At the time the mortgage was made there was pending a litigation in which the Powells were plaintiffs and one Cunningham and others were defendants, and the Powells had assigned their recovery in that action to the Crouches. The latter then demanded the chattel mortgage as security until the Cunningham case should be settled, saying that they would not record it, but would hold it until they received the money from the Cunningham case. It was further agreed between the parties that the mortgagors should continue in possession of the property, as though no mortgage had been given, have the use of the same, and sell the chattels and use the avails thereof; and they did, in fact, use the lumber, moldings, sash, doors, and such materials in buildings they were erecting, and also sold some of the property. The Cunningham case was determined in September, 1890, and $7,788.63 was paid to the Crouches, who, however, did not surrender the mortgage, but later, on the 15th of December, 1890, filed the same, and subsequently took possession of the property remaining. Defendants' version of the transaction is that they agreed not to record the mortgage until the Cunningham claim was settled, and that then, if enough was realized from the claim, they would "turn it back to them"; but that said claim did not realize enough to pay the debt, and so they filed the mortgage. On the 6th of January, 1891, Robert Gay, one of the creditors of the Powells, recovered three judgments against them, upon debts contracted between July 7 and December 15, 1890. On the 15th day of January following, the plaintiff was appointed receiver of the property of the Powells in proceedings supplementary to execution issued upon these three judgments. On the 13th day of April, 1891, the receiver says he mailed a letter to the Crouches, in which he demanded of them that they surrender the property, but without stating any ground or reason therefor. On or about the same day the Crouches began a foreclosure of the mortgage, and upon the sale bought in the property for $411.50, and thereupon resumed possession

thereof as purchasers. .Plaintiff claims the property was worth several thousand dollars. About the time of the sale one of the defendants was examined in supplementary proceedings, but it does not appear that any questions were asked in respect to the delay in not filing the mortgage, or in regard to the retention of the possession of the property by the mortgagors being in fraud of creditors. In May following the sale under the mortgage, the receiver contemplated bringing an action to set aside the mortgage on the ground that it was filed, and a sale had thereunder, in breach of the agreement between the parties; but the summons in the action contemplated was never served. The attorney for the receiver testified that a short time after the complaint was verified the Powells began their action against the Crouches for an accounting, and he held the action in abeyance pending the determination of that suit. In October, 1891, an action was begun by the Powells against the Crouches for an accounting of money and real estate received by the latter from the former since 1887. In January, 1892, the receiver was substituted as plaintiff in that action at the request of the judgment creditor. . The referee to whom the action was referred by the court filed his report in 1893, in and by which he found and stated an account between the parties, charging the Powells with various items, amounting in all to $59,155.84, and crediting them with items amounting in all to $32,917.17, one item of which was, "Proceeds chattel mortgage specified in subd. No. 22, $411.50," leaving a balance due the Crouches of $26,238.67. As conclusions of law the referee found that the Powells owed the Crouches the sum of $26,-238.67, and that the latter held title to several parcels of real estate which had been conveyed to them as security for said indebtedness, and that the plaintiff, as receiver of the Powells, was entitled to redeem said real estate. In November following, judgment was entered in accordance with the report of the referee. An appeal was taken therefrom, and that judgment was affirmed upon said appeal. 29 N. Y. Supp. 1147. No question relating to the validity of said mortgage was either pleaded or litigated in that action. Thereafter, in February, 1894, an action was brought by said Robert Gay, as a judgment creditor of the Powells, to set aside said mortgage as fraudulent and void as to him, but was dismissed on the ground that the plaintiff had no execution outstanding, and consequently no lien, without which he could not maintain the action. This action was commenced in January, 1895, plaintiff's receivership being first extended by orders made January 4th and 5th, to cover a fourth judgment of said Gay, recovered March 16, 1891, and two judgments of Gledhill, recovered respectively March 7, 1891, and April 25, 1892.

The plaintiff offered evidence to show how the referee came to credit the Powells with the sum of $411.50, for the purpose of repelling any inference that the validity of the mortgage was involved in that litigation, or that it could be made the foundation of an estoppel, or amount to a ratification or affirmation of the defendants' acts, or constitute a waiver of the right to attack the validity of the mortgage. It appears from the plaintiff's offer to prove that on the trial of the accounting suit the plaintiff attempted to prove that

the recording of the mortgage and the foreclosure and sale there-
under was a breach of the agreement made between the parties at
the time the mortgage was executed, but the referee ruled that.
damages for such breach could not be recovered in that action; that
he then asked for an amendment of the complaint, so as to allege
payments of personal property, as well as money, in order that
proof might be given concerning the chattel mortgage transaction,
and that the referee refused to allow such amendment, on the ground
that it made a different cause of action; that thereupon defendants'
counsel admitted that on the sale of the chattels $411.50 was real-
ized, and that the Powells might be credited with that sum as of
October 23, 1891.   The court sustained the objection to the offer,
but permitted the plaintiff to put in evidence the original requests
to find submitted to the referee, in which no mention is made of the
mortgage, nor any claim to a credit on account thereof, nor any
relief in respect to it.   It appears from respondents' brief that they
have abandoned the position which they took on the trial that the
judgment rendered in the suit for an accounting necessarily deter-
mined the validity of the mortgage, and that, therefore, the matter
was res adjudicata.   It is clear that the fraudulent character of the
mortgage was not a fact in issue in that action, and it was not de-
termined by the findings or judgment in any way, nor has the court
here found as a conclusion of law that plaintiff is estopped by a
former adjudication.   But the respondents contend that, having
sold the property to themselves on the foreclosure, and turned the
proceeds of the sale over to the mortgagors, by giving them a credit
on their account for that amount, and the judgment in the former
action having allowed the receiver, as the legal representative of
the mortgagors, to redeem their real estate held by the respondents,
for $411.50 less than respondents' claim against them (but for the
credit of that amount), this constituted a ratification of the sale,
and the receiver and the judgment creditors are estopped from at-
tacking the validity of the mortgage.   And the court finds that by
receiving a credit for that sum this constituted an election to affirm
the sale of the property, and the plaintiff is estopped from question-
ing the validity of the mortgage.   The court also finds that it was
plaintiff's duty, if he intended to dispute the validity of the mort-
gage, to have that question adjudicated, which he did not do, but
elected to treat it as a valid lien upon the property, and accepted
the proceeds of the sale with full knowledge of the fact that the
mortgage was void as to creditors.   Evidently the plaintiff had no-
tice of the nonfiling of the mortgage, and intended to waive that
objection, but there is no affirmative proof that he had any knowl-
edge of its fraudulent character arising from the permission to the
mortgagors to sell and use the proceeds.   The court also finds that
no claim was made by the plaintiff in the other action that the de-
fendants should account for the value of the property instead of the
proceeds of the sale, or for any greater sum than it sold for.   That
is not so, for the plaintiff offered to prove that he endeavored to
compel the defendants to account for the property taken, on the
ground that the payment of $7,788.63 recovered in the Cunningham

suit discharged the mortgage by virtue of the prior agreement. There was no claim, however, to recover the value of the property upon the ground of its fraudulent character, because, as we have said, there is no proof that the plaintiff had notice of it.

The question, then, is, what is the legal effect or consequence of allowing to the mortgagors a credit for the proceeds of the mortgage sale in the hands of the mortgagees, upon the rights and interests of the judgment creditors of the mortgagors? In the accounting action it was found that the Powells (the mortgagors and judgment debtors) were indebted to respondents in the sum of $59,155.84, and were entitled to credit in the amount of $32,417.17, leaving a balance in favor of the respondents of $26,238.67. The latter were charged with $411.50, the proceeds of the mortgage sale, as so much money in their hands, and the Powells were credited with that amount, and to that extent reducing their indebtedness. Upon the payment of the amount found due (subject to any deduction by a further accounting), the receiver was adjudged entitled to redeem the real estate held by the defendants as security for the indebtedness. If this sum of $411.50 had not been so charged to the defendants and credited on the Powells' indebtedness, the balance in favor of the former would have been $26,650.17, and that would have been the price of redemption. Of course, the receiver had no funds with which to make such redemption, and has received nothing in consequence of the suit. He has not accepted or received this item of credit, or availed himself of this right of redemption, and he will never be able to do so, unless he is supplied with funds by the judgment creditors; and that is an extreme improbability. The creditors have gained no benefit or advantage from that action, and there is no expectation that they ever will. The result shows that the prosecution of the suit was continued by the receiver rather as the representative of the judgment debtors and for their benefit than as a representative of the judgment creditors on their behalf and for their profit or advantage. The benefit of the credit will ultimately inure to the benefit of the judgment debtor himself. The judgment merely fixed the amount of the indebtedness of the Powells to the defendants, and determined their equitable rights in the real estate; but that adjudication is of no consequence to the judgment creditors, for they are in no position to avail themselves of it. It produced no valuable effect, nor answered any useful end.

The inquiry is suggested whether the allowance of this credit to the judgment debtors and the deduction of it from their indebtedness to the mortgagees amount to a waiver of the rights of the judgment creditors in respect of the mortgage property, or constitute a ratification of the sale, or an affirmation of the validity of the fraudulent mortgage, or create an estoppel against them in the assertion of their legal and equitable rights? Is it competent for a receiver appointed in supplementary proceedings, by crediting the proceeds of the sale of mortgaged property in the hands of a fraudulent mortgagee, upon a debt due the latter, to preclude himself, acting as a trustee for the creditors, from thereafter questioning the validity of the mortgage? In other words, may the receiver

waive the rights, interests, and claims of the judgment creditors in and to the mortgaged property, and elect to ratify and confirm the sale thereof by the mortgagee, by allowing an application of the proceeds in reduction of the mortgagors' indebtedness to the latter? May he purge the mortgage of the fraud, and make a void mortgage valid, to the prejudice of his cestuis que trustent, without receiving anything of value for their benefit? It is not pretended that the receiver is empowered, by virtue of his office, to agree with a fraudulent mortgagee that the proceeds of the sale may be applied in reduction of the mortgagor's indebtedness, but it is insisted that this result may be accomplished by means of an action for an accounting, wherein the mortgagor is charged with a large indebtedness, and from which no benefit or advantage may accrue to the judgment creditors. Since the judgment creditors have received nothing under the judgment rendered, and it is very unlikely that they ever will, it is difficult to perceive any grounds or reasons upon which to base an equitable estoppel. It is not competent for a trustee for creditors to waive their rights or claims in respect of the property of their debtors in that manner, and preclude them from asserting them. If the receiver had redeemed the land by paying therefor the sum fixed by the judgment, it might be claimed with some show of reason that this amounted to an acceptance of the item of credit, and that the judgment creditors would be estopped from afterwards claiming the mortgaged property or its value, upon the ground of the benefit that would, presumably, be received from a subsequent sale of the land. But here the receiver has done no act indicating such an acceptance, and has received nothing whatever even in partial satisfaction of the judgments. When the receiver has received or acquired any benefit from the judgment, by availing himself of its provisions, it will be time enough to claim title to the property under the fraudulent mortgage, upon the ground of estoppel or ratification. Until that event occurs, the defendants are in no position to invoke the doctrine of estoppel against the claims of creditors. That the rights of creditors should be forfeited or frittered away in this manner by the acts or conduct of their trustee should not be permitted and ought not to be sanctioned. No doubt the prosecution of the accounting suit was continued by the receiver in expectation of recovering money or real estate from the defendants, but the result of it was that the mortgagors were found largely indebted to them, and the receiver is in no position to avail himself of the right to redeem. That being the result, the receiver has not recovered or received anything which he may apply to the payment of the judgments, and therefore no waiver or estoppel is created by the judgment. The duty of the receiver is to recover the property belonging to the judgment debtor, or property in which the judgment creditors have a paramount interest, and to collect the debts due him, and to apply the same in satisfaction of the claims of creditors. Surely, he is not empowered to consent, whether in a judicial proceeding or otherwise, that the proceeds of a sale under a fraudulent mortgage may be applied in reduction of the mortgagor's indebtedness, and thus inure to the

special benefit of the mortgagor, and in derogation of the rights and claims of his creditors.    And very appropriate here is the language of Bradley, J., in a recent decision:

"There is a further reason why the doctrine of election is not applicable to this case. The plaintiff is a trustee for the creditors of his assignors, and he cannot, by pursuing a futile remedy, produce a forfeiture of the vested rights of his cestuis que trustent to have the property held by him in that relation available for their benefit, nor can he voluntarily relinquish his rights in that respect. His power and duty in the execution of the trust are in harmony, and he cannot effectually proceed in contravention of either." Bowdish v. Page, 81 Hun, 176, 30 N. Y. Supp. 695..

A receiver is clothed with no powers to waive the equitable rights of the judgment creditors, for the protection of whom he was appointed.    Keiley v. Dusenbury, 42 N. Y. Super. Ct. 238. We are unable, therefore, to conceive any rule of law or principle of equity upon which it can be adjudged that these judgment creditors, represented by the receiver, are estopped from questioning the validity of the mortgage, and claiming it to be void as to them.    Nor do we deem it of any consequence that the receiver may have possessed knowledge of the fraudulent character of the mortgage, for it was not competent for a trustee to waive the rights of creditors to the property of their debtors, and affirm a sale of it by a fraudulent mortgagee, simply by allowing the application of the proceeds in diminution of the mortgagor's indebtedness.    Under such circumstances as these, the whole transaction being fraudulent, the doctrine of estoppel will not be applied to aid the defendants.    Royce v. Watrous, 73 N. Y. 597.    We are of the opinion, therefore, that the allowance of the item of credit to the mortgagors in the former suit cannot operate as a waiver of the rights and claims of the judgment creditors. in respect of the mortgaged property, or constitute a ratification of the sale, or an affirmation of the validity of the mortgage, nor create an estoppel against the assertion of their rights.

In respect to the cases cited by the defendants, there is no such resemblance in their facts, circumstances, or relations as to warrant their application here by way of analogy; on the contrary, there is a marked difference.    The principle that, when a creditor recognizes a transfer by accepting the proceeds of it with full knowledge of all the facts, he is estopped from thereafter impeaching it as fraudulent, cannot be invoked in such a case as this.    But the respondents further claim that they are entitled to a deduction of said sum of $411.50, because the judgment in the accounting suit gives the receiver the right to redeem the real estate for $26,238.77, whereas, but for this credit, the price of redemption would have been $26,650.17.    The plaintiff, in his complaint, offers to allow this deduction, if. the court should deem that to be equitable.    The grounds and reasons before stated preclude the allowance of this deduction against the claim of the judgment creditors.    The receiver has not availed himself of this credit, or of this right of redemption, and he will never be able to do so, unless he is supplied with funds by the judgment creditors; and that is very improbable.    The consequence is that those creditors have received no benefit or ad-

vantage from that accounting or the judgment rendered therein; and why, therefore, should that sum be set off against their claims? Some time in the future, it may be, the judgment debtors will avail themselves of the right of redemption, and thus receive the benefits that may accrue.    But a recovery in this action will wipe out that item of credit from the judgment, and neither the receiver nor the mortgagors will have any right to redeem at the sum fixed therein. And, further, the judgment creditors, by their trustee, repudiate the credit conceded to the mortgagors, and, in effect, make an offer in their complaint to expunge it from the record.    But the arguments and reasons heretofore advanced lead to the conclusion that this item credited to the debtors cannot be set off against the claims of their creditors.    In effect, it would be setting off an indebtedness of the mortgagors against the claims of their judgment creditors. Again, the judgment creditor Gledhill was not represented by the receiver in the accounting suit, and is therefore not estopped by it (2 Van Fleet, Former Adj. 999); and, of course, her claim is not subject to diminution by reason of that credit.    And yet, if that credit was equivalent to a payment to the creditor Gay, the mortgagee would be entitled to reduce the claim of a subsequently pursuing creditor to that extent.    This consequence shows the difficulty of holding that to be payment when nothing is parted with by the mortgagees, and nothing received by the judgment creditors.

The respondents make no argument in their brief that the receiver or the judgment creditors are estopped from asserting any rights or claims to the mortgaged property by reason of laches, lapse of time, silence, or acquiescence, as intimated in the findings of the court, and therefore no discussion of these matters is required.    We are unable to perceive, however, that the vested rights of the judgment creditors have been forfeited by the delay of the receiver, under all the circumstances existing in the case.

It is not necessary in the decision of this appeal to determine the liability of a fraudulent mortgagee for an accidental loss of the goods by fire, as the question has not been fairly presented and argued, and ample opportunity will be afforded upon the new trial.

Another thing:    It seems from the case that plaintiff was seeking on the trial to charge the respondents for the value of the property they never received; i. e. the materials that were either sold or used by the mortgagors, and consequently never delivered to the respondents.    A new trial will rectify this erroneous assumption. The judgment should be reversed, and new trial granted, with costs to abide the event of the action.

Judgment reversed, and new trial granted, with costs to abide the event of the action.    All concur, except ADAMS, J., not voting.